UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW ROTIKAA FOODS LLC, ARPAN REALTY, LLC,<br><br>Plaintiffs,<br>v.<br><br>ROTIWALA LLC,<br><br>Defendant.<br><br>ROTIWALA LLC,<br><br>Counter Plaintiff,<br>v.<br><br>NEW ROTIKAA FOODS LLC, ARPAN REALTY, LLC, NARENDRA SONI, ARADHANA SONI, and ALISHA SONI,<br><br>Counter Defendants. | Civil Action No. 25-1096 (JXN) (SDA)<br><br>**MEMORANDUM OPINION & ORDER** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant/Third-Party Plaintiff Rotiwala LLC's ("Rotiwala" or "Defendant") motion for a preliminary injunction against Plaintiff New Rotikaa Foods LLC ("New Rotikaa") and Plaintiff Arpan Realty, LLC ("Arpan Realty") (collectively "Plaintiffs"), as well as Plaintiffs' motion for a preliminary injunction against Rotiwala, both pursuant to Federal Rule of Civil Procedure 65. Jurisdiction is proper pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(c). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the

reasons set forth below, Plaintiffs and Defendants motions for preliminary injunction are **ADMINISTRATIVELY TERMINATED** pending the completion of limited expedited discovery.

## I.  BACKGROUND

Plaintiffs bring this trademark infringement and breach of contract action against Rotiwala for Rotiwala's alleged impermissible use of New Rotikaa's trademarks. (First Amended Complaint ("FAC") ¶ 1).

### A. The Parties

New Rotikaa is a business specializing in the production, sale, and distribution of various Indian bakery items, including roti and paratha breads, which are sold at bakeries and retail stores. (FAC ¶ 2).

In 2017, Arpan Realty, LLC (affiliated with New Rotikaa) purchased the real property located at 474 Lincoln Highway, Iselin NJ 08830 (the "Property") and renovated it from 2017 to 2022, for use as a retail store/bakery. (*Id.* at ¶ 3).

Rotiwala leases the Property from Arpan Realty to operate a retail store and bakery specializing in Indian foods. (*Id.* at ¶ 4).

### B. New Rotikaa Trademarks, Lease of the Property, and Negotiations Regarding the License Agreement

New Rotikaa owns multiple federally registered trademarks (collectively the "Trademarks") used for branding, advertising, and packaging their bakery products.[1] (*Id.* at ¶¶ 11-13). New Rotikaa has used the Trademarks for over a decade on its website rotikaafoods.com, as well as through third-party delivery platforms, and "has developed substantial good will in their

---

[1] The Trademarks are shown in the First Amended Complaint. (FAC ¶ 11). The '101 mark being the "Rotikaa Word Mark"; the '100, '467, '468, '469, and '470 Marks being the "Rotikaa Logo Marks"; and the '944, '945, '946, '947 Marks being the "Rotikaa Packaging Marks"). (*Id.*; Soni Decl., ¶ 7).

distinctive words and designs" which "has resulted in [New Rotikaa] having gained a public reputation as a source of high-quality Indian foods in New Jersey and around the country." (*Id.* at ¶ 12).

In the Spring of 2024, Plaintiffs began looking for a tenant as a licensee to New Rotikaa to operate the Property as a bakery. (*Id.* at ¶ 17). Haidar A. Shaikh ("Shaikh"), an employee of New Rotikaa since December 2023, expressed interest in becoming the tenant of the Property. (Declaration of Muhammad Junaid Ha Dagia ("Dagia Decl.") ¶ 11, ECF No. 9-2).

On December 19, 2024, after receiving competing offers, Plaintiffs decided to enter into a lease with Shaikh. (FAC ¶ 17; Declaration of Alisha Soni ("Soni Decl.") ¶ 17, ECF No. 15-3). Plaintiffs allege that a deciding factor in selecting Shaikh was his promise to pay $50,000 in exchange for Plaintiffs to cease negotiations with other third-parties. (FAC ¶ 17; Soni Decl., ¶ 17).

On December 20, 2024, Shaikh and Dagia were given a two-to-three-hour tour of the facility located at the Property. (Dagia Decl., ¶ 14).

Subsequently, Shaikh obtained an investor, Muhammad Junaid Ha Dagia ("Dagia") and together they formed Rotiwala LLC for the purpose of leasing the Property and entering into a licensing agreement for use of the New Rotikaa Trademarks. (FAC ¶ 17; Soni Decl., ¶ 18).

On December 26, 2024, the parties began negotiations related to a license agreement ("License Agreement") and memorialized their negotiations. (FAC ¶ 22 (citing Ex. E, ECF No. 24-5); Soni Decl., ¶ 24).

On December 27 and 28, 2024, Rotiwala and Arpan Realty executed a lease agreement for the Property ("Lease") respectively. (FAC ¶ 18; Soni Decl., ¶ 19). The Lease was to begin on January 6, 2025, however, Rotiwala took early occupancy on December 31, 2024, and paid prorated rent. (*Id.*).

New Rotikaa avers that "it was the understanding of all parties involved that the parties would execute a separately drafted and written instrument constituting a License Agreement, whose terms were not yet defined . . . ." (Soni Decl., ¶ 20).

Paragraph 6 of the Lease memorialized this understanding as follows:

> 6. Certain Restrictions. Tenant shall be subject to a License Agreement, the terms of which shall be incorporated by reference. Further, at no time during the term of this Lease shall the Tenant sell unbaked flatbread, including but not limited to rotis or parathas without a written license agreement from the Landlord or an affiliate of the Landlord.

(FAC ¶ 19 (citing Ex. B, ECF No. 24-2); Soni Decl., ¶ 21).

Thereafter, between December 26, 2024, and January 4, 2025, multiple payments were exchanged between the parties. (FAC ¶ 21). Payments were memorialized by written documents signed by the parties acknowledging payment. (*Id.*). Plaintiffs assert these documents note that "the [p]arties were to sign and execute a separate License Agreement that further defines the rights of the Parties as to the use of the Property to sell products in connection with the [Trademarks]." (*Id.* (citing Ex. D, ECF No. 24-4); Soni Decl., ¶ 23). Rotiwala avers that on one such document acknowledging payment, dated December 26, 2024, entitled "Final Purchase Agreement payment" it acknowledges payment of $20,000, states that Rotiwala has paid a total of $50,000 "towards the lease of [the Property] . . . *along with the License [A]greement* to the sales right to the cooked and . . . product brand [New] Rotikaa® details of which are part of the premises lease agreement as well as the License [A]greement to be signed separately." (Dagia Decl., ¶ 16, Ex. B, ECF No. 9-4) (emphasis added). Rotiwala also emphasizes the following clause which is written on the same acknowledgment of payment: "At this point in time, all parties including Arpan Realty LLC, [New] Rotikaa Foods and Rotiwala LLC agree not to back out of the Lease and License [A]greement that are to be signed by all 3 parties in the next 1-10 business days." (Dagia Decl., ¶ 16, Ex. B).

4

On December 31, 2024, New Rotikaa and Rotiwala "executed an Inventory Purchase Agreement, wherein the Defendant purchased an inventory of products, ingredients, and packaging to be sold at the store on the Property[]" (FAC ¶ 23 (citing Ex. F, ECF No. 24-6)), so that Rotiwala "could begin operating . . . ." (Soni Decl., ¶ 26). The inventory totaled $232,068 "payable in unequal installments, over the course of five months" (FAC at ¶ 23). Rotiwala also hired New Rotikaa's existing employees. (Dagia Decl., ¶ 22).

The Final Inventory Purchase Agreement required a payment of $125,000 on January 6, 2025. (*Id.* at ¶ 24; Soni Decl., ¶ 27). Rotiwala had previously given Plaintiffs a check for this amount, however, when New Rotikaa cashed the check, the check bounced. (FAC ¶ 24). Subsequently, Defendant wired $24,975 directly to New Rotikaa and deposited a check in the amount of $50,000 into a different Rotikaa bank account. (*Id.* at ¶ 25). Thereafter, Defendant deposited another $35,000 check to the same account and dated another check in the amount of $15,000 dated for January 14. (*Id.*).

On January 13, 2025, Plaintiffs' counsel emailed Rotiwala a demand letter regarding Rotiwala's "overdue payments and respective breach of contract with . . . New Rotikaa" and a draft License Agreement. (*Id.* at ¶ 26 (citing Exs. G and H, ECF Nos. 24-7, 24-8). According to the demand letter Rotiwala owed $15,035, plus a $10 fee incurred by New Rotikaa because the check bounced. (FAC Ex. G).[2]

On January 15, 2025, Rotiwala's counsel sent a letter in response, stating that the $125,000 was paid in full and stated Rotiwala would remit the $10 check fee "without delay." (FAC ¶ 26, Ex. I, ECF No. 24-9). Additionally, Rotiwala's counsel stated the licensing agreement "does not accurate[ly] reflect agreement between the parties." (*Id.*).

---

[2] The demand letter noted that the last check Rotiwala gave New Rotikaa in the amount of $15,000 could not be cashed until the next day January 14, 2025. (FAC Ex. G).

Thereafter, from January 19, 2025, through January 31, 2025, several letters were exchanged between the parties along with various redlined versions of the License Agreement, however, Plaintiffs informed Rotiwala their redlined edits were not acceptable. (*Id.* at ¶¶ 28-33).

On January 29, 2025, Plaintiffs' counsel sent Defendant a letter advising that if the License Agreement was not signed by February 4, 2025, Plaintiffs "will take immediate action to remove their trademarks from the building . . . including the removal of their trademarks from all social media, internet presence, physical product packaging, building signage, and all interior displays." (Dagia Decl., ¶ 38 (citing Ex. H, ECF No. 9-9)).

Subsequently, Rotiwala avers that Plaintiffs shut down www.rotikaafoods.com and closed New Rotikaa's accounts with Uber Eats, Door Dash, and Grub Hub. (Dagia Decl., ¶ 37).

On February 6, 2025, Rotiwala paid the February rent. (Dagia Decl., ¶ 18).

### C. Procedural History

On February 7, 2025, Plaintiffs filed their initial complaint. (ECF No. 1).

On February 12, 2025, Rotiwala filed a motion for a preliminary injunction. ("Def.'s Br.") (ECF No. 9).

On February 13, 2025, Plaintiffs filed an amended complaint. (ECF No. 10).

On February 21, 2025, Plaintiffs filed a motion for a preliminary injunction. ("Pls.' Br.") (ECF No. 15).

On March 5, 2025, Plaintiffs filed the First Amended Complaint. (ECF No. 24).

On April 7, 2025, New Rotikaa replied. (ECF No. 29).

On April 14, 2025, Rotiwala replied. (ECF No. 31).

This matter is now ripe for consideration.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A court may grant a preliminary injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*; *see also Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (repeating general rule stating four requirements).

A district court's decision to issue a preliminary injunction is discretionary. *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006).

## III. DISCUSSION

"Importantly, a preliminary injunction should not be issued where material issues of fact are in dispute." *JRM Constr. Mgmt., LLC v. Plescia*, No. 23-932, 2023 WL 2770479, at *3 (D.N.J. Apr. 4, 2023); *see also Vita-Pure, Inc. v. Bhatia*, 2015 WL 1496396 at *3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Collick v. Weeks Marine, Inc.*, 397 F. App'x 762, 764 (3d Cir. 2010) (preliminary injunction is inappropriate where there is an "abundance of contradictory facts on both sides of the record"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, 2014 WL 5392065, at *1 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014).

Central to this action is whether a licensing agreement exists between New Rotikaa and Rotiwala regarding the use of New Rotikaa's trademarks. Plaintiffs assert no final License Agreement was executed. (Pls.' Br. at 5-7; FAC ¶ 34; Soni Decl., ¶ 36). Defendant contends

7

otherwise and asserts a License Agreement was entered into. (Def.'s Br. at 5-7; Dagia Decl., ¶¶ 16-17, 19-20).[3] While the parties did not sign the License Agreement, it is unclear whether the parties had an implied license agreement or an agreement in principle. Indeed, such a fact is crucial to determining the likelihood of success on the merits for both preliminary injunctions. As such, the Court finds expedited discovery is appropriate to better enable the Court to assess success on the merits.[4] *See, e.g., Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, No. 98-2782, 1998 WL 404820, at *4 (E.D. Pa. July 15, 1998) (noting that "expedited discovery is particularly appropriate" where that discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing") (citation modified).

## IV.  CONCLUSION

Accordingly, for the foregoing reasons and for good cause shown,

**IT IS** on this 28th day of August 2025,

**ORDERED** that the parties shall conduct limited expedited discovery within sixty (60) days[5] relevant and tailored to the issue of whether the parties entered into a valid licensing agreement related to the use of the New Rotikaa Trademarks as follows:

> (1) The parties may serve written discovery requests, limited to five (5) interrogatories and five (5) document requests per side (including subparts), by September 17, 2025;

---

[3] The Court notes that in paragraph 20 of Dagia's Declaration, he avers that Exhibit D contains comments in red from one of New Rotikaa's owners, Mr. Soni, "where he acknowledges all terms of the License Agreement between the parties." (Dagia Decl., ¶ 20). However, Exhibit D is not attached to Rotiwala's filing. (*See* ECF No. 9). The Court further notes Exhibit D attached to Rotiwala's Reply Brief is a Sanitary Inspection Report Certificate. (ECF No. 29-12).

[4] Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). "However, courts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery." *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-465, 2011 WL 4478477, at *3 (first citing Fed. R. Civ. P. 26(d)(1); then citing Fed. R. Civ. P. 26(d) advisory committee notes (1993) ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . .").

[5] Limited expedited discovery will end on October 27, 2025.

(2) The parties shall serve any responses to such requests by October 1, 2025;
(3) The parties shall serve any third-party discovery requests by October 8, 2025;
(4) The parties may take up to five (5) fact depositions each, on mutually agreed upon dates and times, but no later than October 15, 2025;
(5) The parties shall meet and confer on whether additional limited discovery in the form of requests for admission or other method is appropriate; it is further

**ORDERED** that the parties may modify the discovery schedule set out herein by way of a consent order; it is further

**ORDERED** that to the extent necessary, the parties shall contact Magistrate Judge Stacey D. Adams, U.S.M.J., to resolve any discovery disputes; it is further

**ORDERED** that in the interest of efficient case management, Rotiwala's and Plaintiffs' motions for preliminary injunctions (ECF Nos. 9, 15) are **ADMINISTRATIVELY TERMINATED** pending completion of limited expedited discovery; and it is further

**ORDERED** that upon the completion of limited expedited discovery, the parties shall file a joint letter requesting the reinstatement of the preliminary injunction motions to the Court's active docket, or permission to file new motions that address the parties' jurisdictional discovery, within seven (7) days after completion of limited expedited discovery.

_____
**JULIEN XAVIER NEALS**
United States District Judge